**Application of HIROSHI TANAKA et al.**

**Patent Appeal No. 76–629.**

United States Court of Customs and Patent Appeals.

March 10, 1977.

Joseph M. Fitzpatrick, Carroll G. Harper, John A. O'Brien, Fitzpatrick, Cella, Harper & Scinto, New York City, attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from a decision of the Patent and Trademark Office Board of Appeals (board) affirming the rejection under 35 U.S.C. § 103 of claims 27, 29, 31, 33, 36, 37, and 41 in appellants' application serial No. 133,990, filed April 14, 1971, for reissue of their United States patent No. 3,438,706 entitled "Electrophotographic Device." The board reversed the § 103 rejection of claim 42. The patent is assigned to Canon, Inc. of Japan. We affirm in part and reverse in part.

## The Invention

The invention sought to be secured by this reissue application is a resilient scraping blade used to remove residual toner particles from the photosensitive surface of an electrophotographic copying machine after transfer of the toner particle image to the copy material. The residual particles may then be recovered for reuse. The invention may be understood with more particularity by reading claim 33 with Fig. 11 (emphasis and bracketed numerals ours):

FIG. 11

33. In an electrographic copying device wherein an electrostatic latent image formed on the surface of a photosensitive member [1] is moved past a series of processing stations including a development station at which the latent image is developed with toner particles to form a toner image and a transfer station at which the toner image is transferred to copying material, an improvement comprising a resilient scraping blade [96] having a substantially angular engaging edge and being elongated along the width of said photosensitive member, holder means [97] for holding said resilient scraping blade and maintaining its engaging edge in contact with the surface of said photosensitive member [1] for scraping off residual toner particles, and means for recovering said scraped off residual toner particles [toner box 77].

858

*The Prior Art Relied On*

In his Answer, the examiner relied on three patents: Bolton,[1] Ego,[2] and Shepardson et al.[3] In affirming the examiner, the board relied on Bolton, characterizing Ego (which shows an angular blade in a paint scraper) as "superfluous" and Shepardson et al. (which shows toner collection in a copier) as "merely cumulative." The Bolton patent describes an electrophotographic printer; its Fig. 1, is reproduced below:

FIG. 1.

1. U.S. patent No. 2,889,758, issued June 9, 1959, on an application filed December 24, 1954.

2. U.S. patent No. 2,879,530, issued March 31, 1959, on an application filed March 3, 1955.

3. U.S. patent No. 3,062,110, issued November 6, 1962, on an application filed July 2, 1959.

The Bolton printer is said to be useful in printing so-called "personalized" form letters, which differ only in their headings. Bolton achieves this result by using two somewhat different methods of xerographic printing, one for the body of the letters and the other for the headings. For the body, Bolton first creates a latent electrostatic image of the body on his photosensitive plate 29 (all numerical references are to Bolton Fig. 1, above). This image is developed with toner particles which are then fused to the plate, forming a permanent image which, since the toner particles are of insulating material, may itself be charged electrostatically and developed with toner. Any number of copies may be produced from this "permanent design image layer," much as in a duplicator. To print the headings of these form letters, Bolton forms successive latent electrostatic images on the same photosensitive plate. These images may be developed with toner, but they are not permanent, thus permitting a different heading for each letter. The two kinds of images are developed with toner and printed together, the heading image changing with each copy, as just noted. After each copy is printed, a roller brush 71 removes the excess toner particles remaining on the photosensitive plate before the plate is electrostatically charged again. These excess toner particles are collected in a housing 72. When all letters have been printed, the permanent design image layer, from which the body of each letter was printed, may be wiped off by "solvent saturated sponges" 77 which are moved into contact with plate 29 by energizing electromagnet 74 which attracts one end of pivoted armature 75.

### The Board's Opinion and Decision

The board found the differences between Bolton and the claimed invention to be "minimal," stating that Bolton Fig. 1 shows an electrophotographic copier with "a device for removing residual toner particles 73 comprising a resilient scraping blade 77 which has holder means to maintain 77 in contact with the photosensitive member to remove toner particles, and means for recovering toner (the horizontal bottom part of 73)." The board was aware that Bolton had described his element 77 as "solvent saturated sponges," but nevertheless stated that each one extended across the drum "so that each wiper covers the entire lateral surface and hence [the sponges] are properly describable as blades." Further, the board stated that "broadly" these "blades" could be said to have "substantially angular engaging edges," as called for by some of appellants' claims. The board compared the function of Bolton's sponges with that of appellants' scraper as follows:

> Regarding the "removing residual toner particles" claim phrase, Bolton's uppermost element 77 [a solvent saturated sponge] will remove whatever residual toner particles are left from the solvent unfixing the fixed toner design and the lowermost element 77 [another solvent saturated sponge] will remove whatever residual toner particles are not removed by cleaning means 71 [the roller brush].

On this interpretation of Bolton, the board found a "clear case for obviousness."

### Appellants' Arguments

Appellants contend that the board erred in its evaluation of Bolton. Specifically, they argue that the board erred in describing the Bolton sponges as scraping blades, in attributing to the sponges the function of removing residual toner particles, and in attributing toner particle recovery to the horizontal part of Bolton's element 73. These errors in evaluation, say appellants, caused the board to erroneously find that the differences between their invention and Bolton were "minimal," a finding on which the board predicated its conclusion of obviousness.

### OPINION

We partially agree with appellants that the board erred in evaluating Bolton. Nowhere does Bolton intimate that the horizontal bottom part of his "wiping station 73" is employed for recovering toner particles or even that it could be. Indeed, the "bottom part" is not described and 73 is called neither an element nor a device but a

"station." The only element that is described as being employed to catch toner particles is housing 72 which is associated with the roller brush 71 and not with the sponges 77.

Notwithstanding this disagreement with the board's evaluation of the reference relied on, the question before us is the propriety of its *decision* affirming the examiner's rejection of the appealed claims for obviousness under § 103. In considering this issue we, of course, give the claims their broadest reasonable interpretation, *In re Pearson*, 494 F.2d 1399, 1404, 181 USPQ 641, 645 (CCPA 1974).

Certainly Bolton's elements 77, when activated at the time when it is desired to remove the entire toner image from plate 29—fused and unfused image alike—remove "residual" toner particles. Elements 77 are described as sponges and sponges are resilient. A bar-shaped sponge pressed on a rotating drum has a scraping action. The claims on appeal call for a scraper shaped as recited in claim 33, supra, or, as in claim 36, "a resilient scraping blade arranged for engaging along an edge thereof said electrostatic recording surface * * *." The question is not whether Bolton shows precisely the same scraper as appellant but whether the scraper structures claimed would have been obvious within the purview of § 103. We agree that they would have been and will therefore affirm as to claims 27, 29, 31, and 36.

Claims 33, 37, and 41 call for further "means" in the combination which presents a different issue. Claim 33 calls for "means for recovering said scraped off residual toner particles;" claim 37 for "means for removing toner particles scraped up by said scraping blade to a collection source;" and claim 41 for "collecting means for receiving said residual toner particles scraped from said surface." Since Bolton contains no

suggestion whatever of recovery and in fact teaches away from recovery of any toner removed by his elements 77, we do not find claims 33, 37, and 41 to describe obvious subject matter and reverse their rejection.

The decision of the board is *affirmed* as to claims 27, 29, 31, and 36 and *reversed* as to claims 33, 37, and 41.

*MODIFIED.*

BALDWIN, Judge, dissenting in part, with whom LANE, Judge, joins.

I would affirm as to claims 33 and 41, because I believe the subject matter described therein would have been obvious in view of Bolton. The terms "recovering" as used in claim 33 and "receiving" as used in claim 41 connote a capture of dispersed particles without a requirement that the particles remain in reusable form or that they be reused. In addition to the fact that there is no basis in the record for adopting a more limited meaning for the terms, it is the practice of this court to give pending claims their broadest reasonable interpretation. *In re Pearson*, 494 F.2d 1399, 181 USPQ 641 (CCPA 1974). Obviously, the fused toner particles which are scraped off the surface by the Bolton sponge will either accumulate at the head of the sponge until the sponge is replaced or fall to the base of the machine and accumulate there. In either case, some part of the machine will be "recovering" or "receiving" the resulting accumulation of particles. Thus, the terms of claims 33 and 41 do not distinguish the present invention over operations inherent in Bolton.